958 N.E.2d 341 (2011)
354 Ill. Dec. 598
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Kody L. PRICE, Defendant-Appellant.
No. 4-10-0311.
Appellate Court of Illinois, Fourth District.
September 16, 2011.
*343 Michael J. Pelletier, State Appellate Defender, Karen Munoz, Deputy Defender, Michael H. Vonnahmen, Asst. Appellate Defender, Office of State Appellate Defender, for Kody L. Price.
Thomas J. Brown, Livingston County State's Attorney, Patrick Delfino, Director, Robert J. Biderman, Dep. Director, Anastacia R. Brooks, Staff Atty., State's Attorneys Appellate Prosecutor, for People.

OPINION
Justice TURNER delivered the judgment of the court, with opinion.
¶ 1 In January 2010, the State charged defendant, Kody L. Price, with one count of home invasion (720 ILCS 5/12-11(a)(2) (West 2008)), three counts of residential burglary (720 ILCS 5/19-3(a) (West 2008)), and two counts of aggravated battery (720 ILCS 5/12-4(b)(2) (West Supp.2009)). After a March 2010 trial, a jury found defendant guilty of all six charges. Defendant filed a motion for a judgment notwithstanding the verdict. At a joint hearing in April 2010, the trial court denied defendant's posttrial motion and sentenced him to concurrent prison terms of 12 years for home invasion, 8 years for each residential-burglary conviction, and 5 years for one aggravated-battery conviction (since the two aggravated-battery convictions merged).
¶ 2 Defendant appeals, asserting (1) the State failed to prove him guilty beyond a reasonable doubt of home invasion; (2) the three residential-burglary convictions and sentences must be vacated under the one-act, *344 one-crime rule; and (3) he did not receive effective assistance of counsel because his counsel failed to assert his sentences were excessive in a postsentencing motion. We affirm in part, vacate in part, and remand the cause with directions.

¶ 3 I. BACKGROUND
¶ 4 The State's home-invasion charge alleged that, on the night of January 6-7, 2010, defendant, a person not a peace officer acting in the line of duty, without authority knowingly entered David Siefert's home when defendant had reason to know that one or more persons were present therein at the time and intentionally caused injury to David Siefert, Jr., within the dwelling. The three residential-burglary charges alleged that, on the same night, defendant knowingly and without authority entered David Siefert's home with the intent to commit therein a felony (each count named a different felony). The two aggravated-battery charges asserted that, on the same night, defendant, while masked in such a manner as to conceal his identity, committed a battery, in that defendant knowingly (1) caused bodily harm to David Siefert, Jr., or (2) made physical contact of an insulting or provoking nature with David Siefert, Jr.
¶ 5 In March 2010, the trial court held a jury trial on the six charges. The evidence relevant to the issues on appeal is as follows. David Siefert, Sr. (hereinafter Senior), testified that, on the night of January 6-7, 2010, he lived at 710 North Mill Street in Pontiac, Illinois, with his son David Siefert, Jr. (hereinafter Junior), and Dustin Roe. Roe was not home the night of the incident. At around midnight, Senior heard the door knocker on his front door knock a couple of times. At the time, he was in the living room and looked out the window. He did not see anything and went to his bedroom to look out that window. From the bedroom window, he could see two people on the front porch in dark clothing. Senior described the lighting on the porch as one light on each side of the front door and the lights had a motion detector. With the motion detector, the lights would turn on when someone walked up to the door. As he was leaving his bedroom, Senior heard the doorbell ring. After that, Senior saw the glass screen door open, and he called 9-1-1. The two people on the porch then started kicking in the front door. In response, Senior went to Junior's bedroom and woke him up.
¶ 6 While he was in Junior's bedroom, the two men appeared in the doorway. Junior yelled at them to get out of the house. The shorter one, defendant's accomplice, asked for "stuff." Junior and the two individuals began yelling back and forth. Senior noted the two men had dark clothing, jackets with the hoods up, stocking caps, and bandanas across their faces. Eventually, a struggle ensued between Junior and the two men. Junior fell to the floor, and the two began kicking him. After Junior asked for help, Senior began fighting with the taller one, which Senior identified as defendant. Defendant tried to leave the home, and Senior was able to maintain a hold on defendant until the police arrived.
¶ 7 Junior testified that, when the two men came to his bedroom, they demanded "the stuff." He did not know what "the stuff" was. Junior could not see the men's faces because of the bandanas, "hoodies," and stocking caps. Junior also noted one of the men acted like he had something in his pocket.
¶ 8 Officer Ryan Bradshaw testified that, after the incident, he put defendant in the back of his squad car. After reading defendant his rights, Officer Bradshaw turned on the car's video and audio recorder and questioned defendant. The court *345 admitted the recording of the interview as evidence.
¶ 9 During the interview, defendant explained the plan was to rob the people for some "weed" (cannabis). Defendant had heard they had a lot of drugs in the house. Defendant thought the people would not contact the police because they had weed. Defendant stated he thought it would be nice to rob a drug dealer. He further explained a girl named Shelly had shown him the house and wanted him to get the weed out of it. Shelly had told him she liked a person who lived there, and the person would not stop selling weed. If defendant robbed the person of the weed, the person would stop selling it.
¶ 10 At the conclusion of the trial on March 10, 2010, the jury found defendant guilty of all six charges.
¶ 11 On April 15, 2010, defendant filed a motion for a judgment notwithstanding the verdict, asserting, inter alia, the State's evidence was insufficient for the jury to find him guilty of home invasion because the manifest weight of the evidence showed defendant had no reason to believe any person was inside the building. The next day, the trial court held a joint hearing on the posttrial motion and sentencing. The court first denied the posttrial motion. As to sentencing, defendant presented a letter from himself and one from Ashley Church, his fiancée. After hearing the parties' arguments, the court sentenced defendant as stated. In handing down the sentences, the court found no factors in mitigation; and as to aggravation, it found defendant's conduct caused or threatened serious harm, defendant had a history of prior criminal activity, and a sentence was necessary to deter others from committing the same offenses. The court noted defendant did something terrible that "really scares people." It further stated, defendant did "not have a mental-health history or substance abuse history severe enough to justify his actions." The court also disparaged the suggestion the blame for defendant's conduct lies with his mother or the five foster homes from which he ran away. The court further highlighted the fact defendant had a problem with violence, was consistently violent, and was premeditatedly violent in this instance.
¶ 12 On April 20, 2010, defendant filed a notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606(d) (eff. Mar.20, 2009), and thus we have jurisdiction over defendant's convictions and sentences under Illinois Supreme Court Rule 603 (eff. July 1, 1971). See People v. Lewis, 234 Ill.2d 32, 37-39, 332 Ill.Dec. 334, 912 N.E.2d 1220, 1223-25 (2009) (rejecting the State's argument the reviewing court lacked jurisdiction over defendant's sentencing challenge where the nature-of-appeal line was left blank). We note defendant's amended notice of appeal that he moved for filing on July 1, 2010, was untimely under Illinois Supreme Court Rules 606(d), 303(b)(5), and 303(d) (Ill.S.Ct.Rs. 303(b)(5), (d) (eff. May 30, 2008)).

¶ 13 II. ANALYSIS

¶ 14 A. Sufficiency of the Evidence
¶ 15 Defendant first asserts the State failed to prove him guilty beyond a reasonable doubt of home invasion because its evidence was insufficient to show he knew or had reason to know a person was present in the dwelling place at the time of his entry.
¶ 16 When presented with a challenge to the sufficiency of the evidence, a reviewing court's function is not to retry the defendant. People v. Givens, 237 Ill.2d 311, 334, 343 Ill.Dec. 146, 934 N.E.2d 470, 484 (2010). Rather, we consider "`whether, after viewing the evidence in the light most favorable to the prosecution, any rational *346 trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (Emphasis in original.) People v. Davison, 233 Ill.2d 30, 43, 329 Ill.Dec. 347, 906 N.E.2d 545, 553 (2009) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Under that standard, a reviewing court must draw all reasonable inferences from the record in the prosecution's favor. Davison, 233 Ill.2d at 43, 329 Ill.Dec. 347, 906 N.E.2d at 553. Additionally, we note a reviewing court will not overturn a criminal conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." Givens, 237 Ill.2d at 334, 343 Ill. Dec. 146, 934 N.E.2d at 484.
¶ 17 In this case, the State had to prove the following elements for the jury to find defendant guilty of home invasion: (1) defendant was not a police officer acting in the line of duty, (2) defendant knowingly made an unauthorized entry into the dwelling of another, (3) defendant knew or had reason to know that one or more persons were present therein, and (4) defendant intentionally caused injury to a person in the dwelling place. See 720 ILCS 5/12-11(a)(2) (West 2008). Defendant contends the State's evidence was insufficient to prove he knew or had reason to know a person was present in the Sieferts' home when he entered it.
¶ 18 Our supreme court has noted that, "`[i]n a prosecution for home invasion, knowledge may be proven by circumstantial evidence so long as the State presents sufficient evidence from which an inference of knowledge can be made.'" People v. Hickey, 178 Ill.2d 256, 292, 227 Ill.Dec. 428, 687 N.E.2d 910, 927 (1997) (quoting People v. Ramey, 240 Ill.App.3d 456, 462, 181 Ill.Dec. 439, 608 N.E.2d 512, 516 (1992)). One of the circumstances indicating knowledge of a person's presence is the time of day of the entry. See Hickey, 178 Ill.2d at 292, 227 Ill.Dec. 428, 687 N.E.2d at 927 (finding the State's evidence was sufficient to establish knowledge of a person present where, inter alia, the offense occurred before dawn on a weekday when most people are asleep or just getting up to go to work); People v. Frisby, 160 Ill.App.3d 19, 30, 111 Ill.Dec. 700, 512 N.E.2d 1337, 1344 (1987) (noting the defendant's entry into the dwelling at 4 a.m. was a factor in establishing the defendant's knowledge); People v. Tackett, 150 Ill. App.3d 406, 420, 103 Ill.Dec. 574, 501 N.E.2d 891, 901 (1986) (holding knowledge was established, in part, by the fact the defendant had entered the home at 1 a.m.). Here, defendant entered the Sieferts' home at around midnight, generally a time when most people are at home asleep or getting ready to sleep.
¶ 19 Moreover, the State's evidence showed defendant and his accomplice tried to conceal their identity, indicating they expected to encounter people in the residence. Both Senior and Junior testified the two men wore bandanas covering most of their face, stocking caps, and jackets with the hoods up.
¶ 20 Defendant's and his accomplice's actions also indicated they expected people to be in the dwelling. The pair first knocked on the door and rang the doorbell. A reasonable inference is they were trying to get an occupant to open the front door. When no one answered, they kicked in the door, went to the bedroom where both of the occupants were, and demanded "the stuff." Such actions suggest defendant had entered the dwelling to confront an occupant. Defendant's intent to confront someone in the dwelling when he entered it is further supported by his own statements on the recording. Defendant admitted he knew the home was inhabited and wanted to rob the people of their weed. *347 Defendant also noted he thought the home's occupants would not call the police because they had weed.
¶ 21 In support of his argument, defendant notes no one answered the front door and he and his accomplice were unarmed. However, it is common for a person not to answer the front door in the middle of the night when not expecting a visitor. Moreover, a person can restrain another person without a weapon. The facts highlighted by defendant do not negate the aforementioned evidence showing defendant knew or had reason to know there were occupants in the home.
¶ 22 Accordingly, we find the State's evidence was sufficient to prove beyond a reasonable doubt defendant knew or had reason to know a person was present in the Sieferts' dwelling when he entered it.

¶ 23 B. One-Act, One-Crime Rule
¶ 24 Defendant next argues his residential-burglary convictions must be reversed and the sentences vacated because those convictions are carved from the same physical act as his home-invasion conviction and thus they violate the one-act, one-crime rule. Defendant acknowledges he failed to raise this issue in a postsentencing motion and urges us to review the matter under the plain-error doctrine. The State does not contest plain-error review and concedes two of the three residential-burglary convictions should be vacated because they are based on the same entry.
¶ 25 The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:
"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." People v. Sargent, 239 Ill.2d 166, 189, 346 Ill.Dec. 441, 940 N.E.2d 1045, 1058 (2010).
Our supreme court has held a violation of the one-act, one-crime rule results in a surplus conviction and sentence and affects the integrity of the judicial process, and thus satisfies the second prong of the plain-error rule. See People v. Harvey, 211 Ill.2d 368, 389, 286 Ill.Dec. 124, 813 N.E.2d 181, 194 (2004). Thus, we will consider whether defendant's residential-burglary convictions violate the one-act, one-crime rule.
¶ 26 In People v. King, 66 Ill.2d 551, 566, 6 Ill.Dec. 891, 363 N.E.2d 838, 844 (1977), our supreme court declared a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. Since multiple convictions cannot be based on precisely the same physical act, "a court first determines whether a defendant's conduct consisted of separate acts or a single physical act." People v. Rodriguez, 169 Ill.2d 183, 186, 214 Ill.Dec. 451, 661 N.E.2d 305, 306 (1996). The King court defined "act" as "any overt or outward manifestation which will support a different offense." King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d at 844-45. In Rodriguez, 169 Ill.2d at 188, 214 Ill.Dec. 451, 661 N.E.2d at 308, our supreme court further explained a defendant could be convicted of two offenses when a common act is part of both offenses. "`As long as there are multiple acts as defined in King, their interrelationship does not preclude multiple convictions * * *.'" (Emphasis omitted.) Rodriguez, 169 Ill.2d at 189, 214 Ill.Dec. 451, 661 N.E.2d at 308 (quoting *348 People v. Myers, 85 Ill.2d 281, 288, 55 Ill.Dec. 389, 426 N.E.2d 535, 538 (1981)). If the court determines the defendant committed multiple acts, the court moves to a second step and determines whether any of the offenses were lesser-included offenses. Rodriguez, 169 Ill.2d at 186, 214 Ill.Dec. 451, 661 N.E.2d at 306.
¶ 27 In People v. McLaurin, 184 Ill.2d 58, 106, 234 Ill.Dec. 399, 703 N.E.2d 11, 34 (1998), the supreme court found the offenses of home invasion and residential burglary had been carved from the same physical act of the defendant's entering the dwelling of the victim and vacated the residential-burglary conviction and sentence at the first step of the King analysis. We recognize several cases have since vacated residential-burglary convictions based on the aforementioned holding in McLaurin. See People v. Johnson, 347 Ill.App.3d 570, 577, 283 Ill.Dec. 330, 807 N.E.2d 1171, 1177-78 (2004); People v. Martinez, 342 Ill.App.3d 849, 862, 277 Ill. Dec. 202, 795 N.E.2d 870, 880-81 (2003); People v. Chanthaloth, 318 Ill.App.3d 806, 813-14, 252 Ill.Dec. 887, 743 N.E.2d 1043, 1048-49 (2001). However, the McLaurin court did not address its earlier decision in Rodriguez or the fact the home-invasion offense required the additional physical act of causing injury to a person in the dwelling.
¶ 28 Moreover, the McLaurin court's holding as to home invasion and residential burglary is inconsistent with its earlier holding in that same decision as to intentional murder and home invasion. Regarding those crimes, the defendant asserted the convictions resulted from the same physical act, i.e., the setting of the fire. McLaurin, 184 Ill.2d at 105, 234 Ill.Dec. 399, 703 N.E.2d at 33. The McLaurin court noted "multiple convictions and concurrent sentences are permitted where a defendant has committed several acts, despite the interrelationship of those acts." McLaurin, 184 Ill.2d at 105, 234 Ill.Dec. 399, 703 N.E.2d at 33. It then concluded the two offenses were not carved from the same physical act of setting the fire because the home-invasion offense involved an additional physical act of entering the victim's dwelling. McLaurin, 184 Ill.2d at 105, 234 Ill.Dec. 399, 703 N.E.2d at 33.
¶ 29 In a similar case, this court addressed whether convictions for home invasion, domestic battery, and aggravated battery could stand. See People v. Peacock, 359 Ill.App.3d 326, 295 Ill.Dec. 563, 833 N.E.2d 396 (2005). In finding multiple convictions were proper, we stated the following:
"An offense, however, can consist of more than one act. As charged in the present case, home invasion has two elements: the unauthorized entry of a dwelling and the intentional injury of a person therein. 720 ILCS 5/12-11(a)(2) (West 2002). One element is just as much a physical act as the other. See King, 66 Ill.2d at 566 [6 Ill.Dec. 891], 363 N.E.2d at 844-45 (defining an act as any overt or outward manifestation which will support a different offense). As long as there are multiple acts as defined in King, their interrelationship does not preclude multiple convictions * * *. (Emphasis omitted.) Rodriguez, 169 Ill.2d at 189 [214 Ill.Dec. 451], 661 N.E.2d at 308, quoting People v. Myers, 85 Ill.2d 281, 288 [55 Ill.Dec. 389], 426 N.E.2d 535, 538 (1981). The convictions in this case were based on interrelated acts rather than precisely the same physical act. (Emphases added.) See Rodriguez, 169 Ill.2d at 186 [214 Ill.Dec. 451], 661 N.E.2d at 306." (Internal quotation marks omitted.) Peacock, 359 Ill.App.3d at 332-33, 295 Ill.Dec. 563, 833 N.E.2d at 402.
*349 ¶ 30 The rationale for multiple convictions for home invasion and another crime that shares one of the home invasion's physical acts as set forth in McLaurin as to intentional murder and home invasion and in our Peacock decision is consistent with the supreme court's analysis in Rodriguez. Accordingly, we follow the McLaurin court's holding as to intentional murder and home invasion, which recognized home invasion consisted of two separate physical acts and the fact one act was the same as another crime did not mean the two crimes were carved from the same physical act. See McLaurin, 184 Ill.2d at 105, 234 Ill.Dec. 399, 703 N.E.2d at 33. Since the home invasion and residential burglary convictions shared only the act of entry, and home invasion required the additional act of causing injury to a resident, we find home-invasion and residential burglary are not carved out of the same physical act. Since defendant does not argue residential burglary is a lesser-included offense of home invasion, we need not engage in a second-step analysis. Accordingly, we conclude defendant's convictions for both home invasion and residential burglary do not violate the one-act, one-crime rule.
¶ 31 However, as the State points out, all three of the residential burglary convictions were based on the same act, i.e., the entry into the Siefert residence. Accordingly, only one conviction for residential burglary can stand.

¶ 32 C. Effective Assistance of Counsel
¶ 33 Defendant last argues he did not receive effective assistance of counsel because counsel failed to file a motion to reconsider defendant's sentence, in which he could have argued his sentences were excessive.
¶ 34 This court analyzes ineffective-assistance-of-counsel claims under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). People v. Evans, 186 Ill.2d 83, 93, 237 Ill.Dec. 118, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under Strickland, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. Evans, 186 Ill.2d at 93, 237 Ill.Dec. 118, 708 N.E.2d at 1163.
¶ 35 To satisfy the deficiency prong of Strickland, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. Evans, 186 Ill.2d at 93, 237 Ill.Dec. 118, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. Evans, 186 Ill.2d at 93, 237 Ill.Dec. 118, 708 N.E.2d at 1163-64. The Strickland Court noted that, when a case is more easily decided on the ground of lack of sufficient prejudice rather than that counsel's representation was constitutionally deficient, the court should do so. Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
¶ 36 In this case, defendant has failed to establish the prejudice prong of Strickland because defendant's sentences were not excessive. This court has explained appellate review of a defendant's sentence as follows:
"`A trial court's sentencing determination must be based on the particular circumstances of each case, including *350 factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense.'" People v. Hensley, 354 Ill. App.3d 224, 234-35, 289 Ill.Dec. 474, 819 N.E.2d 1274, 1284 (2004) (quoting People v. Kennedy, 336 Ill.App.3d 425, 433, 270 Ill.Dec. 305, 782 N.E.2d 864, 871 (2002)).
¶ 37 Defendant's remaining sentences are concurrent prison terms of 12 years for home invasion and 5 years for aggravated battery. Home invasion is a Class X felony with a sentencing range between 6 and 30 years' imprisonment. 720 ILCS 5/12-11(a)(2), (c) (West 2008); 730 ILCS 5/5-4.5-25(a) (West 2010). Aggravated battery is a Class 3 felony with a sentencing range between two to five years' imprisonment. 720 ILCS 5/12-4(b)(2), (e)(1) (West Supp.2009); 730 ILCS 5/5-4.5-40(a) (West 2010). Both of defendant's sentences fall within the applicable sentencing range. While this was defendant's first adult conviction, he had an extensive juvenile record and history of violence. This crime was also a violent one. The record demonstrates the court considered the evidence about defendant's home life, history of mental illness, substance abuse, placement in multiple foster homes, and his youth. Here, the trial court did not abuse its discretion in sentencing defendant.
¶ 38 Since defendant failed to show prejudice as a result of his counsel's failure to file a motion to reconsider defendant's sentence, we find defendant was not denied effective assistance of counsel.

¶ 39 III. CONCLUSION
¶ 40 For the reasons stated, we affirm in part and vacate in part the trial court's judgment and remand the cause to the Livingston County circuit court for an amended sentencing judgment reflecting the vacatur of two of the three residential-burglary convictions and sentences. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.
¶ 41 Affirmed in part and vacated in part; cause remanded with directions.
Justice STEIGMANN concurred in the judgment and opinion.
Justice POPE specially concurred, with opinion.
¶ 42 Justice POPE, specially concurring:
¶ 43 While I agree with the result the majority has reached, I find it difficult to distinguish McLaurin. There, our supreme court held residential burglary and home invasion are carved from the same physical act of entering a dwelling. McLaurin, 184 Ill.2d at 106, 234 Ill.Dec. 399, 703 N.E.2d at 34.
¶ 44 Instead, I would rely on the later pronouncement of our supreme court in People v. Miller, 238 Ill.2d 161, 345 Ill.Dec. 59, 938 N.E.2d 498 (2010). In Miller, the supreme court discussed the seminal case of People v. King, 66 Ill.2d 551, 6 Ill.Dec. *351 891, 363 N.E.2d 838 (1977). Under King, if only one act supports two charges, a defendant is prejudiced by the entry of multiple convictions. However, where multiple acts support two charges, a defendant is prejudiced by two convictions only where the second charge is a lesser-included offense of the first charge. King, 66 Ill.2d at 566, 6 Ill.Dec. 891, 363 N.E.2d at 844-45. The court in King held when more than one offense arises from multiple incidental or closely related acts, and the offenses are not lesser-included offenses, convictions with concurrent sentences can be entered. King, 66 Ill.2d at 566, 6 Ill. Dec. 891, 363 N.E.2d at 845.
¶ 45 Citing King and Rodriguez with approval, the Miller court explained the first step of the two-step analysis used to determine whether multiple convictions run afoul of the one-act, one-crime rule, as follows:
"First, the court must determine whether the defendant's conduct involved multiple acts or a single act." Miller, 238 Ill.2d at 165, 345 Ill.Dec. 59, 938 N.E.2d at 501.
¶ 46 Here, defendant's conduct with respect to the home invasion involved multiple acts. Defendant entered the dwelling place of Siefert and intentionally caused him injury. With respect to the residential burglaries, defendant entered the dwelling place of Siefert and demanded "stuff." Each offense involved multiple acts, although they shared the related act of "entry." Since residential burglary did not require the act of injuring someone, and home invasion did not require the act of demanding "stuff," each offense consisted of an act not required to be present in the other offense. Thus, defendant's conduct did not involve a single act supporting two offenses. His conduct consisted of multiple acts, differing in part, supporting two offenses. Since neither party contends residential burglary, as charged in this case, was a lesser included offense of home invasion, I agree with the majority there is no need to engage in the second-step analysis.