NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180300-U

NO. 4-18-0300

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 25, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DEVITO M. TAYLOR, | ) | No. 17CF462 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding (1) the trial court's admonishments to the jury did not violate Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (2) defendant failed to show his sentence resulted from an abuse of the trial court's discretion.

¶ 2   Defendant, Devito M. Taylor, appeals from his conviction and sentence for the manufacture or delivery of a controlled substance. On appeal, defendant argues this court should vacate his conviction and sentence and remand for a new trial because plain error occurred where the trial court's admonishments to the jury violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and the evidence was so closely balanced the error threatened to tip the scales of justice against him. In the alternative, defendant argues this court should reduce his total

sentence to six years in prison or remand for a new sentencing hearing because the sentence imposed against him is excessive. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4                                      A. Information

¶ 5          In April 2017, the State charged defendant by information with one count of being an armed habitual criminal (count I) (720 ILCS 5/24-1.7(a) (West 2016)), two counts of unlawful possession of weapons by a felon (counts II and VI) (720 ILCS 5/24-1.1(a) (West 2016)), one count of possession of a stolen firearm (count III) (720 ILCS 5/24-3.8(a) (West 2016)), one count of manufacture or delivery of a controlled substance with intent to deliver 15 grams or more but less than 100 grams of a substance containing cocaine (count IV) (720 ILCS 570/401(a)(2)(A) (West 2016)), and one count of unlawful possession with intent to deliver less than 50 grams of a substance containing hydrocodone (count V) (720 ILCS 570/401(d) (West 2016)). The State proceeded to defendant's jury trial on counts I, IV, and VI, and moved to dismiss counts II, III, and V.

¶ 6                                      B. Jury Trial

¶ 7          In December 2017, the trial court held a four-day jury trial. During *voir dire*, the court explained to the venire the four principles contained in Rule 431(b): (1) defendant was presumed innocent of the charges against him, (2) the State had the burden of proving defendant guilty beyond a reasonable doubt, (3) defendant was not required to prove his innocence, and (4) defendant had an absolute right not to testify and any decision not to testify must not be considered in any way in arriving at a verdict. The court impaneled prospective jurors in panels of four for examination. Prior to swearing the selected jurors in, the court stated to each panel:

- 2 -

"The defendant is presumed to be innocent of the charges against him. Before a defendant can be convicted, the State must prove him guilty beyond a reasonable doubt. The defendant is not required to offer any evidence on his own behalf, and if a defendant does not testify, it cannot be held against him."

The court then asked the selected jurors individually, "[D]o you understand and accept each of those principles?" The record indicates each juror answered in the affirmative.

¶ 8    The State presented the testimony of the following individuals: (1) Jim Kerner, an Urbana police officer; (2) Matthew Quinley, an Urbana police officer; (3) Matthew Ballinger, a University of Illinois police officer; (4) James Scheel, a University of Illinois police officer; (5) Corey Phenicie, a Champaign police officer; (6) Duane Smith, an Urbana police officer; (7) Kristin Stiefvater, a drug chemist at the Illinois State Police crime lab; (8) Corey Formea, a forensic scientist with the Illinois State Police; and (9) Jennifer Aper, a forensic scientist with the biology and deoxyribonucleic acid (DNA) section at the Illinois State Police forensic science laboratory. The State also presented numerous exhibits, including photographs of defendant's residence, the contraband, and other related items seized from the residence. Defendant called Deborah Turner, a neighbor and daycare owner, and testified on his own behalf. The evidence relevant to the issues on appeal follows.

¶ 9    Officer Kerner testified he participated in the search warrant of defendant's residence at 1212 Northwood Drive South. Defendant was the only person at home and was found "laying on his back on his bed in the southeast bedroom." Defendant confirmed he slept in the bedroom where police officers found him. Kerner identified People's Exhibit No. 1 as "36 smaller individually packaged bags" containing suspected crack cocaine and People's Exhibit No. 2 as a small "cylinder-shaped glass container" of suspected cocaine, both recovered from

defendant's front right pants pocket. Kerner testified he and Officer Phenicie further searched defendant's bedroom and found a Beretta .25-caliber pistol under the mattress, five individually packaged bags of suspected cocaine in the pocket of a blue bathrobe, eight individually packaged bags of suspected cocaine in the pocket of a red bathrobe, and a larger bag of suspected cocaine behind the bedroom door, which Kerner identified as People's Exhibit Nos. 3, 4, 5, and 7 respectively. Kerner also identified People's Exhibit No. 6, which was a plastic bag containing a "sizable amount" of suspected cocaine found in the hallway of the home. Based on his experience, Kerner believed the bags containing the substances were packaged for sale and their total street value to be approximately $7,000.

¶ 10 Officer Quinley testified his responsibilities were to photograph, document, and collect each piece of evidence found in defendant's residence. Quinley confirmed he collected People's Exhibit Nos. 1, 2, and 4-7 and secured everything in an evidence locker at the Urbana Police Department. Based on his experience, Quinley testified the substances found in the home were packaged for the purpose of selling cocaine, stating, "You, you have two and a half ounces [of] cocaine collectively in two certain forms, powder and crack. You have a scale. You have packaging material. This, this is delivery amounts."

¶ 11 Officer Ballinger testified he remained with defendant while other officers secured the residence. Ballinger stated defendant attempted to initiate a conversation and said "something in regards to, 'You won't find anything in here, it's back there. I don't keep it everywhere, you know.' "

¶ 12 Officer Phenicie testified he was tasked with counting and sealing all of the United States currency found throughout defendant's residence, which totaled $1773.

¶ 13        Officer Smith testified he was the evidence custodian for the search warrant of defendant's residence. His job was to collect and securely store evidence submitted by officers from their calls and conduct any necessary follow-up. Smith transported People's Exhibit Nos. 1, 2, and 4-7 to the Illinois State Police forensic laboratory to confirm the substances and their weight.

¶ 14        Stiefvater testified she took custody of the items delivered by Smith and placed them in the drug chemistry vault. Stiefvater then weighed and completed "two standard scientific tests on each of the items." Stiefvater stated the total weight of the items was 70.5 grams and the results of the tests "showed that cocaine was present in each of the items."

¶ 15        Defendant testified on his own behalf and indicated his wife and 15-year-old son resided with him. Defendant also testified he and his wife occasionally slept in separate bedrooms and stated he had fallen asleep in his wife's bedroom on the day police executed the search warrant. Defendant denied previously seeing any of the bags of suspected cocaine found throughout the residence or the .25-caliber pistol seized by police. Defendant stated both bathrobes in the bedroom belonged to his wife.

¶ 16        At the conclusion of the trial, the jury found defendant guilty of manufacture or delivery of a controlled substance with intent to deliver 15 grams or more but less than 100 grams of a substance containing cocaine.

¶ 17                          C. Posttrial Proceedings

¶ 18        On February 2, 2018, the trial court commenced defendant's sentencing hearing and noted it had received a presentence investigation report (PSI) filed January 30, 2018. Defendant, who was then 45 years old, had a lengthy criminal history dating back to 1987, which now included, among numerous convictions for traffic offenses, convictions for nine felony

offenses. Defendant's felony convictions included convictions for burglary, possession of a controlled substance, and manufacture or delivery of a controlled substance. Defendant received sentences of conditional discharge, probation, and imprisonment. Many of defendant's community-based sentences were revoked or terminated unsuccessfully. In November 1998, defendant was sentenced to 24 months' probation for a domestic battery conviction.

¶ 19        Defendant was unemployed. He had been able to obtain employment in 2009 for approximately 60 days. Defendant did not possess a high school diploma or an equivalent.

¶ 20        Defendant disclosed he began smoking cannabis at the age of eight and, as he got older, admitted smoking cannabis daily. Defendant only abstained from cannabis while he was incarcerated. At age 16, defendant admitted using cocaine with family members, which continued to be a "daily habit" until his incarceration in 2002. Defendant disclosed "[c]ocaine was a problem because of the things [he] did to be able to get high." Defendant reported he never used cocaine again upon his release from prison.

¶ 21        The State recommended defendant be sentenced to 30 years' imprisonment. In support of its recommendation, the State highlighted defendant's criminal history and his failure to complete a community-based sentence. The State also highlighted defendant's residence where he "was selling drugs *** was right next to a daycare" and "well within 500 feet of a nearby park."

¶ 22        Defense counsel recommended defendant be sentenced to six years' imprisonment so he could "get out and address his issue of cannabis." In support of its recommendation, defense counsel further highlighted defendant's rehabilitative potential, noting his age and family support.

¶ 23 Following the parties' recommendations, defendant gave a brief statement in allocution. Defendant stated, "[T]hank you for allowing me to say my part of the story in your courtroom."

¶ 24 The trial court ultimately sentenced defendant to a term of 30 years' imprisonment. In doing so, the court stated it considered the PSI, the comments of counsel, the comments of defendant, and the statutory factors in aggravation and mitigation.

¶ 25 In mitigation, the trial court stated it "cannot find any rehabilitative potential or any significant factors in mitigation whatsoever," although it recognized defendant's age and the fact he had "one teenage son and one adult daughter."

¶ 26 In aggravation, the trial court found defendant ran "an established, fully equipped, robust sales operation from the home *** with all of its dangerous attendant unsavory attributes *** and all right next door to a daycare that was being run." The court also found defendant had a lengthy criminal history which included four previous drug offenses, "one for possession and three involving sales or delivery." The court believed deterrence to be a compelling factor and stated the need to impose a sentence "to make it clear that drug dealing does not belong anywhere, but particularly not in a family neighborhood."

¶ 27 On February 16, 2018, defendant filed a motion to reconsider, arguing, *inter alia,* his sentence was excessive in light of his statement in allocution, rehabilitative potential, substance abuse issues, and the factors in mitigation. Following a hearing on February 22, 2018, the court denied defendant's motion to reconsider.

¶ 28 This appeal followed.

¶ 29                                      II. ANALYSIS

¶ 30 On appeal, defendant argues this court should vacate his conviction and sentence and remand for a new trial because plain error occurred where the trial court's admonishments to the jury violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and the evidence was so closely balanced the error threatened to tip the scales of justice against him. In the alternative, defendant argues this court should reduce his total sentence to six years in prison or remand for a new sentencing hearing because the sentence imposed against him is excessive.

¶ 31 A. The Trial Court's Admonishments

¶ 32 Defendant argues the trial court committed plain error by failing to properly admonish the potential jurors as required by Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), commonly referred to as the four *Zehr* principles (see *People v. Zehr*, 103 Ill. 2d 472, 469 N.E.2d 1062 (1984)). Specifically, defendant contends the trial court failed to ensure the potential jurors understood and accepted each enumerated principle because the court asked the jurors whether they understood and accepted all the *Zehr* principles in two questions to each juror, rather than ask whether the jurors understood and accepted each individual principle through eight separate questions. We disagree.

¶ 33 We first note, as defendant acknowledges, he did not raise this issue before the trial court, which "ordinarily results in forfeiture of the issue." *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 14, 957 N.E.2d 1253. However, where the defendant demonstrates a plain error affecting a substantial right, appellate courts may consider the claim. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). To prevail, the defendant must prove a plain error occurred. *People v. Herron*, 215 Ill. 2d 167, 187, 830 N.E.2d 467, 479 (2005). Plain error occurs "(1) when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' or (2) when 'a

clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675 (quoting *People v. Piatkowski*, 224 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007)). Before this issue can be resolved, we must first determine whether the trial court's admonishments complied with Rule 431(b). See *People v. Cosby*, 231 Ill. 2d 262, 273, 898 N.E.2d 603, 610 (2008) ("[T]he first step in plain-error review is to determine whether error occurred.").

¶ 34            Under Rule 431(b), the trial court must ask each potential juror, either individually or as part of a group,

> "whether that juror understands and accepts the following
> principles: (1) that the defendant is presumed innocent of the
> charge(s) against him or her; (2) that before a defendant can be
> convicted the State must prove the defendant guilty beyond a
> reasonable doubt; (3) that the defendant is not required to offer any
> evidence on his or her own behalf; and (4) that if a defendant does
> not testify it cannot be held against him or her; however, no
> inquiry of a prospective juror shall be made into the defendant's
> decision not to testify when the defendant objects." Ill. S. Ct. R.
> 431(b) (eff. July 1, 2012).

"[T]rial judges must strictly comply with Rule 431(b)" (*People v. McGuire*, 2017 IL App (4th) 150695, ¶ 35, 92 N.E.3d 494), which "mandates a specific question and response process." *People v. Thompson*, 238 Ill. 2d 598, 607, 939 N.E.2d 403, 409 (2010). This process requires a trial court to "ask each potential juror whether he or she understands and accepts each of the

principles in the rule," and "the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Id.* However, the rule "does not dictate a particular methodology for establishing the prospective jurors' understanding or acceptance of those principles." *People v. Quinonez*, 2011 IL App (1st) 092333, ¶ 49, 959 N.E.2d 713. "The failure to properly admonish the jury as to the four basic *Zehr* principles in criminal prosecutions is plain error." *People v. Stevens*, 2018 IL App (4th) 160138, ¶ 75, 115 N.E.3d 1207.

¶ 35        Citing *Thompson* and *People v. McCovins*, 2011 IL App (1st) 081805-B, 957 N.E.2d 1194, defendant contends collapsing the four principles into a "single statement on the law," followed by two questions about acceptance and understanding (as opposed to asking a total of eight questions about acceptance and understanding—two questions for each principle) was insufficient to meet the rule's requirements because it "failed to permit the jurors to focus on each essential principle."

¶ 36        In *Thompson*, the trial court violated Rule 431(b) because it did not ask the prospective jurors "whether they understood and accepted that defendant was not required to produce any evidence on his own behalf" or question if they accepted the presumption of innocence principle. *Thompson*, 238 Ill. 2d at 607. While the supreme court clearly indicated either omitting a principle or failing to ask a juror's acceptance as to any of the principles violated Rule 431(b), the court did not state trial courts must question jurors about each principle separately. *Id.* Instead, at a minimum, trial courts must "address each of the enumerated principles" and ask the jurors if they understand and accept these principles. *Id.*

¶ 37        In *McCovins*, the trial court did not omit any of the principles but discussed them intermittently "during the trial court's prefatory comments to the venire along with basic

courtroom procedure and scheduling" and ended the entire colloquy with a single question "asking whether there was any juror who could not 'abide by' or who 'dispute[d]' 'any or some or all of the principles.' " *McCovins*, 2011 IL App (1st) 081805-B, ¶ 32. The appellate court considered it problematic "the trial court essentially 'collapsed' the four Rule 431(b) principles and included them into one question." *Id.* ¶ 33. However, the inquiry was not problematic because the trial court asked one question. The problem was the way the trial court asked the question. The trial court erred because the court bound the four *Zehr* legal principles with all its prefatory comments and did not clarify its single question about "abiding by" or "disputing" his statements pertained to those principles. *Id.* ¶¶ 36-37. Since there was no way to "ascertain whether the potential jurors understood and accepted each of the four Rule 431(b) principles[,]" the trial court violated Rule 431(b). *Id.* ¶ 36.

¶ 38        Furthermore, in *People v. Willhite*, 399 Ill. App. 3d 1191, 1196-97, 927 N.E.2d 1265, 1269-70 (2010), this court noted Rule 431(b) has no requirement the trial court ask separate questions of the potential jurors about each individual principle.

¶ 39        Here, the trial court's questioning of potential jurors complied with Rule 431(b). The court admonished each panel of potential jurors regarding the Rule 431(b) principles and immediately questioned the potential jurors individually to determine whether they understood and accepted each principle. The court's questioning provided each juror with an opportunity to respond. Despite defendant's assertions to the contrary, *Thompson* does not interpret Rule 431(b) to require a process in which the court addresses each principle individually and "our rationale in *Willhite* was not solely reliant on an earlier, vacated version of *McCovins*." *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶ 64. Accordingly, defendant has failed to establish plain error and no further analysis is warranted. Where defendant fails to meet his burden demonstrating plain

error occurred, the procedural default of forfeiture will be honored by the reviewing court. *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659-60 (2008).

¶ 40                                     B. Excessive Sentence

¶ 41          Defendant next argues the sentence imposed against him is excessive as the trial court failed to consider mitigating evidence and imposed a total sentence without regard for his rehabilitative potential. The State disagrees.

¶ 42          Defendant does not dispute his sentence falls within the applicable statutory limits. A sentence falling within the applicable statutory limits is generally reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341. This is because a trial court is generally "in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case." (Internal quotation marks omitted.) *Id.* A sentence imposed within the statutory limits "will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Id.*

¶ 43          Defendant initially contends the trial court failed to consider the evidence he is a father, a husband, and still young enough to be rehabilitated. Defendant further contends the court failed to consider his "aging criminal history." We disagree. A "trial court is presumed to have considered the mitigating evidence contained in the record." *People v. Means*, 2017 IL App (1st) 142613, ¶ 16, 74 N.E.3d 43. The PSI detailed, and defense counsel highlighted, defendant's substance abuse, relationship with his family, age, criminal history, and rehabilitative potential. In the oral pronouncement of its decision, the trial court explicitly stated it considered the PSI and the recommendations of counsel. In fact, the court addressed defendant's age, children, criminal history, and rehabilitative potential on the record. Defendant again brought to the

- 12 -

court's attention his age, children, criminal history, and rehabilitative potential in his motion to reconsider his sentence. Based on this record, defendant has failed to show the trial court did not consider the mitigating evidence of his age, children, criminal history, and rehabilitative potential.

¶ 44 Ultimately, the trial court found a lengthy term of imprisonment was necessary based on the nature and circumstances of the offense, defendant's criminal history, and the need for deterrence. Based on the evidence before it, we cannot say the trial court abused its discretion in rendering its sentencing decision.

¶ 45 III. CONCLUSION

¶ 46 We affirm the trial court's judgment.

¶ 47 Affirmed.