NO. 4-03-0651

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

RICHARD R. HENSLEY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Livingston County

No. 01CF227

Honorable

Harold J. Frobish,

Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2002, the State charged defendant, Richard R. Hensley, with (1) delivery of a controlled substance (5 grams or more but less than 15 grams of a substance containing methamphetamine) (720 ILCS 570/401(c)(6.5) (West 2000)) (count I), (2) delivery of a controlled substance (less than 5 grams of a substance containing methamphetamine) (720 ILCS 570/401(d)(iii) (West 2000)) (count II), and (3) calculated criminal drug conspiracy (delivery of 5 grams or more but less than 15 grams of a substance containing methamphetamine as part of a conspiracy undertaken with two other persons) (720 ILCS 570/405(a) (West 2000)) (count III).

In April 2002, defendant pleaded guilty to count II.  Following a trial that same month, a jury convicted him of counts I and III.  In May 2002, the trial court sentenced defendant to seven years in prison on count II and eight years in prison on count III, with those sentences to be served concurrently.  (The court found that count I was a lesser-included offense of count III and imposed no sentence upon count I.)

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of calculated criminal drug conspiracy and (2) the trial court (a) erred by admitting other-crimes evidence and (b) abused its discretion by sentencing him to seven years in prison on count II.  We disagree and affirm.

I. BACKGROUND

In January 2002, the State charged defendant with (1) delivery of a controlled substance on October 31, 2001 (5 grams or more but less than 15 grams of a substance containing methamphetamine) (720 ILCS 570/401(c)(6.5) (West 2000)) (count I); (2) delivery of a controlled substance on November 2, 2001 (less than 5 grams of a substance containing methamphetamine) (720 ILCS 570/401(d)(iii) (West 2000)) (count II); and (3) calculated criminal drug conspiracy on October 30, 2001, through November 2, 2001 (delivery of 5 grams or more but less than 15 grams of a substance containing methamphetamine as part of a conspiracy undertaken with two other persons) (720 ILCS 570/405(a) (West 2000)) (count III).

In April 2002, defendant pleaded guilty to count II, and the case proceeded to a jury trial on the remaining counts. Connie Best, defendant's sister, and Sarah Hensley, Connie's daughter and defendant's niece, testified, in pertinent part, as follows.  In March 2001, defendant began supplying methamphetam­ine­ to Connie, who lived with Sarah.  In the summer of 2001, Sarah began using and selling the methamphetamine that defendant was supplying to Connie.  In August 2001, after Connie learned that Sarah had been using and selling the methamphetamine, Connie and Sarah, together, began selling methamphetamine that defendant delivered to them.  Connie and Sarah both testified that defendant (1) was the only person that supplied them with methamphetamine and (2) knew that they were selling the methamphetamine he delivered to them.

In August and September 2001, Connie and Sarah engaged in a series of methamphetamine deliveries to Bloomington undercover police officer Troy Doza
.  Sara testified that her last direct involvement with a methamphetamine delivery was a September 26, 2001, delivery of methamphetamine to Doza.  On October 30, 2001, Doza telephoned Connie and ordered 10 grams of methamphetamine from her, to be delivered to him on October 31, 2001.  On October 31, 2001, Officer Doza arrived at Connie's residence and saw Connie standing outside.  Connie entered her residence "briefly" and then walked outside again and delivered methamphetamine to Doza, who was sitting in his car.  Shortly after Connie's October 31, 2001, delivery, police arrested Connie and Sarah (who testified that she was inside Connie's residence when Connie delivered the methamphetamine to Doza).  

Following their arrest, Connie and Sarah agreed to cooperate with the police to obtain leniency.  As part of the agreement, Connie allowed the police to install video surveillance equipment in her kitchen.  On November 2, 2001, police videotaped defendant's delivery of methamphetamine to Connie in her kitchen in exchange for $700 that had been provided to her by officers.  Sarah was present at the November 2, 2001, delivery and placed the methamphetamine that defendant delivered in a basket.  She also told defendant that she had gotten the $700 for the methamphetamine from a bank.  

Based on this evidence, the jury found defendant guilty of count I (delivery of a controlled substance on October 31, 2001) and count III (calculated criminal drug conspiracy on October 31, 2001, through November 2, 2001).  The trial court sentenced defendant as earlier stated.  

This appeal followed.      

II. ANALYSIS

A. Sufficiency of the Evidence

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of calculated criminal drug conspiracy on October 30, 2001, through November 2, 2001, because the State failed to prove that at least two other individuals were involved in the conspiracy with him from October 30, 2001, through November 2, 2001, as required under the calculated-criminal-drug-conspiracy statute (720 ILCS 570/405(b)(2) (West 2000)).  Specifically, he contends that the State failed to prove that Sarah was involved in the conspiracy during (1) the October 31, 2001, transaction because (a) the State presented no evidence that Sarah knew that a delivery occurred on October 31, 2001, and (b) she had stopped selling methamphetamine as of September 26, 2001; and (2) the November 2, 2001, transaction because her involvement was orchestrated by the police.  We disagree with defendant's contention as to the October 31, 2001, transaction but agree with his contention as to the November 2, 2001, transaction.

The relevant question when considering a challenge to the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the [S]tate, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  
People v. Milka
, 211 Ill. 2d 150, 178, 810 N.E.2d 33, 49 (2004), quoting 
People v. Perez
, 189 Ill. 2d 254, 265-66, 725 N.E.2d 1258, 1264 (2000).  The weight to be given witnesses' testimony, the witnesses' credibility, and the reasonable inferences to be drawn from the evidence are all the responsibility of the fact finder.  
People v. Steidl
, 142 Ill. 2d 204, 226, 568 N.E.2d 837, 845 (1991).      

The Supreme Court of Illinois has adopted the bilateral theory of conspiracy, which requires the actual agreement between at least two participants of the conspiracy to the commission of an offense, 
as opposed to the unilateral theory of conspiracy, which requires that only one of the participants actually agreed to the commission of an offense.  
People v. Foster
, 99 Ill. 2d 48, 51-55, 457 N.E.2d 405, 406-409 (1983).  Our supreme court has applied the bilateral theory of conspiracy to the calculated-criminal-drug-conspiracy statute.  That statute provides, in pertinent part, as follows, "a person engages in a calculated criminal drug conspiracy when *** [the delivery of a controlled substance] is a part of a conspiracy undertaken or carried on with two or more other persons."  720 ILCS 570/405(b)(2) (West 2000)).  "A principal distinguishing feature of a calculated criminal drug conspiracy is that it requires a minimum of three conspirators while a simple conspiracy requires only two."  
People v. Caballero
, 237 Ill. App. 3d 797, 804, 604 N.E.2d 1028, 1034 (1992).  Thus, to prove that a defendant committed the offense of calculated criminal drug conspiracy, the State must prove that an actual agreement existed between the defendant and two or more other persons.  
People v. Harmison
, 108 Ill. 2d 197, 203-04, 483 N.E.2d 508, 511 (1985).  Accordingly, in this case, the State had to prove that defendant, Connie, and Sarah agreed to deliver methamphetamine between October 30, 2001, through November 2, 2001.  

1. 
The
 
October
 
31,
 
2001
, 
Transaction

Defendant first contends that the State failed to prove that Sarah was involved in a conspiracy to sell methamphetamine when the October 31, 2001, transaction took place because (1) the State presented no evidence that Sarah knew that a delivery occurred that day and (2) she had stopped selling methamphetamine as of September 26, 2001.  We disagree.

a. Sarah's Knowledge of Connie's Delivery of 

Methamphetamine to Doza on October 31, 2001

Defendant first contends that Sarah was not involved in the conspiracy on October 31, 2001, because she was not actively involved in Connie's delivery of methamphetamine to Doza on October 31, 2001.  We disagree.

Once a conspiracy is proved, any further illegal acts committed by any one of the parties in furtherance of the common criminal purpose imposes criminal liability on all of the parties, whether or not they participated in the illegal act.  
People v. Vettese
, 61 Ill. App. 3d 279, 282, 377 N.E.2d 1168, 1170 (1978).

At defendant's trial, Connie and Sarah both testified that (1) they sold methamphetamine and (2) defendant (a) supplied them with methamphetamine, (b) knew they were selling the methamphetamine he supplied them with, and (c) was the only person that supplied them with methamphetamine.  Viewing this testimony in the light most favorable to the State, we conclude that a jury reasonably could have found the existence of an on-going conspiracy between defendant, Connie, and Sarah to sell methamphetamine.  Indeed, defendant does not appear to suggest otherwise.

Thus, the mere fact that Sarah did not actively participate in the October 31, 2001, transaction does not negate her criminal liability.  At the time of the October 31, 2001, she remained a coconspirator in the ongoing conspiracy and was therefore criminally liable for the illegal acts committed by Connie in furtherance of the common criminal purpose of defendant, Connie, and Sarah.

Moreover, the evidence showed that (contrary to defendant's contention) Sarah did know about and was actively involved in the October 31, 2001, transaction.  In particular, the evidence showed that (1) Connie delivered methamphetami­ne to Doza outside of her residence and (2) Sarah acknowledged that she (a) was inside Connie's residence during the delivery, (b) knew that Doza was coming that day to get methamphetamine from Connie, (c) watched Doza arrive at the residence that day, and (d) watched Connie walk to Doza's car.

Viewing the record under the appropriate standard of review, we conclude that a jury reasonably could have found that Sarah was a coconspirator on October 31, 2001, and defendant was thus guilty of calculated criminal drug conspiracy based on the October 31, 2001, transaction.

b. Whether Sarah Stopped Selling Methamphetamine

as of September 26, 2001

Defendant also contends that the evidence showed that Sarah had stopped selling methamphetamine as of September 26, 2001.  Defendant thus seems to suggest that Sarah had withdrawn from the conspiracy.  The State responds that even if Sarah did not actively participate in the methamphetamine sales after September 26, 2001, she remained a coconspirator.  We agree with the State.

An individual's membership in a conspiracy is presumed to continue unless the individual withdraws from the conspiracy by the affirmative act of confessing to the police or by clearly communicating to her coconspirators that she is withdrawing.  
United States v. Wren
, 363 F.3d 654, 663 (7th Cir. 2004).  (Although not directly on point, we find support for this conclusion in section 5-2(c)(3) of the Criminal Code of 1961, which provides that a person otherwise accountable under that statute may undo his accountability if "[b]efore the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following:  wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."  720 ILCS 5/5-2(c)(3) (West 2000).)  

In this case, regardless of whether Sarah actively participated in the selling of methamphetamine after September 26, 2001, she took no affirmative action to withdraw from the existing conspiracy between defendant, Connie, and herself prior to the October 31, 2001, transaction.  Accordingly, she remained a coconspirator in the ongoing conspiracy.  See 
Wren
, 363 F.3d at 663 (noting that "simply ceasing to participate [in the conspiracy] even for extended periods of time is not sufficient to show withdrawal").  Viewing the evidence in the light most favorable to the State, we conclude that a jury reasonably could have found that Sarah was a coconspirator at the time of the October 31, 2001, transaction because she had not withdrawn from the ongoing conspiracy.  

3. 
The
 
November
 
2,
 
2001,
 
Transaction

Defendant next contends that the State failed to prove that Sarah was involved in the conspiracy to sell methamphetamine during the November 2, 2001, transaction because she was acting as an agent of the State on that date.  We agree.

Because Connie and Sarah were cooperating with the police and acting on the officers' behalf during the November 2, 2001, transaction, they could not be considered defendant's coconspirators under the bilateral theory of conspiracy.  In 
People v. Breton
, 237 Ill. App. 3d 355, 360, 603 N.E.2d 1290, 1294-95 (1992), the appellate court stated, in pertinent part, as follows:

"Under the bilateral theory of conspiracy, a purported agreement between a defendant and a government agent only feigning agreement will not support a conspiracy conviction because there is no actual agreement and actual agreement is a necessary element of conspiracy. [Citation.]  

An agreement between a defendant and a governmental agent only feigning agreement is an agreement based on the unilateral theory." 

On November 2, 2001, neither Connie nor Sarah intended to engage in a calculated criminal drug conspiracy, as both were then involved at the request of the police.  Thus, during that transaction, no actual agreement existed between defendant, Connie, and Sarah to deliver methamphetamine
.

However, the State's charging instrument did not limit the calculated-criminal-drug-conspiracy charge to November 2, 2001.  Instead, as earlier noted, the State charged defendant with calculated criminal drug conspiracy based on his actions from "October 30, 2001, through November 2, 2001."  As we concluded above, a jury reasonably could have found that a conspiracy existed between defendant, Connie, and Sarah to deliver methamphetamine on October 31, 2001.  Thus, the jury could have found beyond a reasonable doubt that defendant committed the offense of calculated criminal drug conspiracy from October 30, 2001, through November 2, 2001.   

B. Other-Crimes Evidence 

Defendant next argues that the trial court erred by admitting other-crimes evidence--namely, evidence of Sarah's and Connie's September 6 and 25, 2001, deliveries of methamphetamine to Doza
 that they had acquired from defendant.  Specifically, he contends that the court failed to properly balance the probative value of the evidence against its potential for prejudice.  Alternatively, defendant argues that even if this other-crimes evidence was admissible, the court erred by failing to 
sua
 
sponte
 instruct the jury of the limited use of the evidence.  We disagree.

1. 
Admission
 
of
 
Other-Crimes
 
Evidence

Evidence of other crimes in which a defendant may have participated is not admissible to show a defendant's propensity to commit crime.  
People v. Illgen
, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519 (1991).  This general rule is premised on the belief that "[s]uch evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment."  
People v. Lindgren
, 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242 (1980).  However, evidence of other crimes is admissible when relevant for any purpose other than the propensity to commit crime, such as intent, 
modus
 
operandi
, identity, motive, or absence of mistake.  
Illgen
, 145 Ill. 2d at 364-65, 583 N.E.2d at 519; 
People v. Richardson
, 123 Ill. 2d 322, 339, 528 N.E.2d 612, 617 (1988).  "Evidence is considered 'relev­ant' if it has any tendency to make the existence of any fact that is of consequence to the determination of an action more or less probable than it would be without the evidence."  
Illgen
, 145 Ill. 2d at 365-66, 583 N.E.2d at 520.

Even when relevant for a permissible purpose, the trial court must weigh the prejudicial effect of admitting the other-crimes evidence against its probative value.  
People v. Robinson
, 167 Ill. 2d 53, 63, 656 N.E.2d 1090, 1094 (1995).  The court should exclude the other-crimes evidence if the probative value of the evidence is substantially outweighed by the prejud­icial effect on the defendant's right to a fair trial.  
Illgen
, 145 Ill. 2d at 365, 583 N.E.2d at 519.  The admissibility of other-crimes evidence lies within the trial court's sound discre­tion, and we will not reverse that court's decision absent a clear abuse of discretion.  
People v. Heard
, 187 Ill. 2d 36, 58, 718 N.E.2d 58, 71 (1999).  An abuse of discretion will be found only where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court.  
Illgen
, 145 Ill. 2d at 364, 583 N.E.2d at 519.  

An essent­ial element of the calculated-criminal-drug-conspiracy charge against defendant was proof of an agreement between defendant, Connie, and Sarah to deliver methamphetamine.  The State introduced the other-crimes evidence to prove (1) defendant's intent that methamphetamine be sold and (2) that an agreement existed between defendant, Connie, and Sarah to sell it.  After considering counsel's arguments, the trial court (1) noted that the State should be allowed to introduce evidence that was probative as to the existence of an agreement between defendant, Connie, and Sarah; (2) found that the State could attempt to prove the conspiracy existed between defendant, Connie, and Sarah by showing how the three of them had previously interacted regarding the delivery of methamphetamine; (3) found that the other-crimes evidence was "relevant when the charge is conspiracy"; and (4) overruled defendant's objection regarding the admission of the other-crimes evidence.  

We agree with the State that the evidence of the September 6 and 25, 2001, methamphetamine deliveries served a purpose other than demonstrating defendant's propensity to commit the crime.  Specifically, the other-crimes evidence was probative of the existence of a conspiracy between defendant, Connie, and Sarah to deliver methamphetamine.  Although the trial court agreed with defendant that the other-crimes evidence was "very prejudicial," the court ultimately determined that the relevance of the other-crimes evidence to the calculated-criminal-drug-conspiracy
 charge outweighed its prejudicial effect.  We agree with the court's determination and thus conclude that the court did not abuse its discretion by admitting the other-crimes evidence.

2. 
The
 
Trial
 
Court's
 
Failure
 
To
 
Sua
 
Sponte
 
Instruct
 

the
 
Jury
 
Regarding
 
the
 
Other-Crimes
 
Evidence

Defendant next argues that even if the other-crimes evidence was admissible, the trial court erred by failing to 
sua
 
sponte
 instruct the jury.  We disagree.

Initially, we note that defendant did not request a limiting instruction at trial and the trial court did not provide the jury with the pattern jury instruction.  See Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) (hereinafter IPI Criminal 4th).  In 
People v. Denny
, 241 Ill. App. 3d 345, 360-61, 608 N.E.2d 1313, 1324 (1993), this court held, in pertinent part, as follows:

"Because of the significant prejudice to a defendant's case that the admission of other[-]crimes evidence usually risks, we hold that trial courts should not only instruct the jury in accordance with IPI Criminal 2d No. 3.14 at the close of the case, but also orally from the bench (unless [the] defendant objects) at the time the evidence is first presented to the jury."

Nonetheless, 
we concluded in 
Denny
 that the trial court's  failure to 
sua
 
sponte
 give IPI Criminal 2d No. 3.14 
did not constitute plain error.  
Denny
, 241 Ill. App. 3d at 360, 608 N.E.2d at 1323; see also 
People v. Tolbert
, 323 Ill. App. 3d 793, 800, 753 N.E.2d 1193, 1200 (2001) ("it is not always plain error for a court to fail to instruct the jury regarding the limited purpose for other-crimes evidence").  

"'[A] reviewing court [may] con­sider plain errors or defects which affect substantial rights even though the errors were not brought to the trial court's attention. [Citation.]  This plain[-]error rule applies where the evidence in a case is closely balanced or where an error is of such magnitude that the defendant has been denied a fair and impartial trial.'
"  
City of Champaign v. Sides
, 349 Ill. App. 3d 293, 308, 810 N.E.2d 287, 307 (2004), quoting 
People v. Flax
, 255 Ill. App. 3d 103, 108, 627 N.E.2d 359, 363-64 (1993).  

We agree with the State that a review of the record reveals that the evidence was not closely balanced nor was defendant deprived of a fair trial by the court's failure to 
sua
 
sponte
 give the limiting instruction.  We thus conclude that the court did not commit plain error by failing to 
sua
 
sponte
 give IPI Criminal 4th No. 3.14 to the jury.

Although we have so concluded, we nonetheless reaffirm 
Denny
 and urge trial courts to not only instruct the jury in accordance with IPI Criminal 4th No. 3.14 at the close of the case but to also do so orally from the bench when the other-crimes evidence is first presented to the jury (unless the defendant objects).              

C. Defendant's Claim That the Trial Court Abused Its Discretion by Sentencing Him to Seven Years in Prison

Last, defendant argues that the trial court abused its discretion by sentencing him to seven years in prison for count II (delivery of a controlled substance on November 2, 2001).  Specifically, he contends that if we reverse his conviction on count III (calculated criminal drug conspiracy), on which the court imposed an eight-year, concurrent sentence, we should remand for resentencing or reduce the seven-year sentence to five years because (1) the seven-year sentence was not justified by the nature of the offense and (2) the court overlooked mitigating factors that defendant (a) had only one prior conviction, (b) suffered "a severe emotional setback" prior to engaging in criminal activity, (c) had a stable work history, and (d) had a history of substance abuse.  We are unpersuaded.

Because defendant bases his argument regarding modification of his sentence
 on his expectation that we would reverse his calculated-criminal-drug-conspiracy conviction, his argument is rendered moot by our declining to do so.  Nonetheless, we choose to address defendant's argument on the merits.  

In 
People v. Kennedy
, 336 Ill. App. 3d 425, 433, 782 N.E.2d 864, 871 (2002), the appellate court discussed sentencing as follows:

"A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  [Citations.]  Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case.  [Citation.]  Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.]  Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.]  If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense."

Delivery of a controlled substance is a Class 2 offense (720 ILCS 570/401(d)(iii) (West 2000)) and has a sentencing range of three to seven years in prison (730 ILCS 5/5-8-1(a)(5) (West 2000)).

In sentencing defendant, the trial court stated, in pertinent part, as follows:

"We have in [defendant] someone who's 55 years of age.  He does have a felony conviction of burglary.  It's a long time ago, but he is not without a criminal history.  He has been employed at the same job since 1996.  So he has shown some stability in that respect.

* * *

*** I've looked at the mitigating factors that the statute calls for me to consider and the aggravating factors.  And I've looked at the nature of this offense.

We have in [defendant's] deliveries an evil that is very serious.  There is harm to society because of deliveries of such drugs.  There is I believe a deterrent factor the [c]ourt has to weigh.  People need to understand if they get involved in very serious matters such as delivery that they could pay a heavy price.  

I'm particularly troubled with [defendant's] willingness to supply his young niece with drugs.  There was some evidence that his sister was an alcoholic, and he thought perhaps methamphetamine would be better for her than all the alcohol she was drinking.  Regardless of where that's at, it is true that [defen­dant] did not do well by his niece.

* * *

*** I find under these circumstances, [defendant], that eight years is the appropriate sentence [for count III].

* * *

*** With respect to [count II], there is a seven[-]year sentence imposed that will run concurrently with [count III]."

The record shows that the trial court considered the nature of the crime and the aggravating and mitigating factors, including defendant's single prior conviction and work history.  The mere fact that the court did not specifically recite each of the mitigating factors does not call into question the court's consideration of those factors.  See 
People v. Beasley
, 314 Ill. App. 3d 840, 847, 732 N.E.2d 1122, 1128 (2000) (the trial court "is not obliged to recite or assign a value to each factor presented at the sentencing hearing").  Judged in accordance with the appropriate standard of review, we conclude that the court's sentencing decision did not constitute an abuse of discretion.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON and McCULLOUGH, JJ., concur.