NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 170759-U

NO. 4-17-0759

FILED
November 12, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| MATHEW D. DURST, | ) | No. 16CF54 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney, III, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Holder White and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not abuse its discretion by sentencing defendant to five consecutive 10-year prison terms for possession of child pornography with the intent to disseminate, and defendant's as-applied constitutional challenge to his sentence is premature.

¶ 2    Pursuant to an open plea agreement, defendant, Mathew D. Durst, pleaded guilty to five counts of possession of child pornography with the intent to disseminate. After an October 2016 sentencing hearing, the Woodford County circuit court sentenced defendant to five consecutive 10-year prison terms. Defendant filed a motion to reconsider his sentence, which the court denied in January 2017.

¶ 3    Defendant appealed, and this court allowed defendant's agreed motion for summary remand for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). *People v. Durst*, No. 4-17-0024 (June 19, 2017) (motion order unpublished under Illinois

Supreme Court Rule 23(c)). On remand, the circuit court denied defendant's motion to reconsider after an October 2017 hearing. Defendant again appeals and asserts his aggregate 50-year prison sentence is (1) excessive and (2) an unconstitutional *de facto* life sentence. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In April 2016, a grand jury indicted defendant with 11 counts of possession of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2016)) and 10 counts of possession with intent to disseminate child pornography (720 ILCS 5/11-20.1(a)(2) (West 2016)) for his actions on March 24, 2016. At the September 16, 2016, hearing, defendant pleaded guilty to five counts of possession with intent to disseminate child pornography (counts II, IV, VI, VIII, and X). Those counts alleged defendant, with knowledge of the nature or content thereof, knowingly possessed with the intent to disseminate a video or similar visual reproduction or depiction by computer, said video *** depicting (1) "two boys he reasonably should have known to be under the age of 13 years engaging in oral sex" (count II), (2) "a boy he reasonably should have known to be under the age of 13 years engaging in anal sex with an adult male" (count IV), (3) "a boy he reasonably should have known to be under the age of 13 years having oral sex performed on him by an adult male" (count VI), (4) "a boy he reasonably should have known to be under the age of 13 years performing oral sex on an adult male" (count VIII), and (5) "three boys he reasonably should have known to be under the age of 13 years performing oral sex on one another." Under the plea agreement, defendant's sentences were open, and the State sought dismissal of the other 16 counts.

¶ 6        Additionally, at the plea hearing, the circuit court admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012) and determined his plea was voluntary.

The prosecutor gave the following factual basis for the pleas:

"Your Honor, in February 2016 there was a complaint made by employees of the Spring Bay library that one of their computer monitors—a patron had come along and used a computer that was for public access, and there was child—what appeared to be child pornography on that computer. There was an account name that through an investigation came back—it was a Gmail account that came back to this defendant Mathew Durst. Subsequent investigation by Homeland Security Agent [Eric] Bowers he reached out in an undercover capacity to [defendant] that same e-mail account or Google account, and heard that he had child pornography, requested it and within an hour child pornography was sent from the defendant's Gmail account to Agent Bowers.

A subsequent search warrant was executed on March 24, 2016, for the home of [defendant]. There was a zip drive on [defendant]'s dresser, and on that zip drive there were images on counts—and the videos, I'm sorry, on Counts II, IV, VI, VIII, and X as alleged in the Bill of Indictment that showed boys under the age of 13 in various nude and in various forms of—engaging in sex acts. All the boys were under the age of 13 just by looking at them. And they were as described performing those acts.

And this was in the defendant's control. He did not have any authority under any type of law to be in possession of the child pornography. And based upon the previous dissemination to Agent Bowers this was a possession with intent to deliver."

Defense counsel concurred in the prosecutor's factual basis. The court accepted defendant's

guilty pleas to the 5 counts, dismissed the other 16 counts, and set the case for a sentencing hearing.

¶ 7        The presentence investigation report showed defendant had prior convictions for "Indecent Solicitation/Aggravated Criminal Sexual Abuse" in 2000 and "Entice Child Remove Clothes/2nd (Attempt)" in 2001. He received 24 months' probation for both convictions. With the first conviction, defendant's probation was revoked, and he was resentenced to 24 months' probation with 30 days in jail. As to defendant's health, the report noted defendant described his health as "poor." Defendant suffered from spina bifida and lacked bowel and urinary control. Defendant also reported having multiple surgeries and hospital stays. Defendant also reported being diagnosed with manic depression, impulse control disorder, and obsessive-compulsive disorder.

¶ 8        Attached to the presentence investigation were a list of defendant's medications and medical needs, two letters from medical professionals, and five letters from family members. In his letter, Dr. Shawn Piers explained defendant had spina bifida, neurogenic bladder, anemia, significant esophageal reflux, urinary difficulties, depression, chronic constipation, and kidney function abnormalities. Defendant was on multiple medications requiring precision administration to maintain his health. Due to his health problems, defendant must catheterize himself several times a day and must empty his bowel with an enema every other day. Additionally, defendant had a back stimulator that required being charged every other day and needed a walker to walk. Dr. Piers described defendant as "not the typical 35-year old" and noted defendant would likely end up in the hospital if his medical needs are not met. Dr. Paul Fishkin stated defendant needed intravenous medication for his intermittent iron deficiency anemia.

¶ 9       The letters from defendant's relatives explained he functioned as a child and was dependent on others. One of defendant's uncles explained defendant had never known right from wrong. Even after punishment, defendant would do the same wrong thing again. The uncle also noted defendant was sexually abused as a child and the abuse continued into adulthood. Moreover, the uncle explained defendant was in a State program to help him socialize properly, and the helper would take defendant to the library and leave him unsupervised in the library.

¶ 10       At the October 21, 2016, sentencing hearing, the State presented defendant's July 27, 2015, sex offender registration form and the testimony of Agent Bowers. Defendant presented Dr. Ryan Finkenbine's September 1, 2016, fitness report.

¶ 11       Agent Bowers testified he sent defendant a short e-mail seeking child pornography. Agent Bowers had 10 years of training and experience and knew the terms associated with child pornography material featuring young boys. After about three days, Agent Bowers received a hyperlink to a Dropbox account from defendant. Dropbox is a cloud storage site. He clicked on the link, which accessed two file folders. One folder contained 63 images of young boys in various states of undress and engaging in various sexual acts with each other or themselves. The other folder contained 14 videos of boys engaged in sexual acts. Agent Bowers received another e-mail from defendant a few days after the first one, indicating it was Agent Bowers turn to send pornographic material to defendant. Agent Bowers sent an e-mail back stating he already possessed the material defendant sent him and asked for other material. A few days later the search warrant was executed on defendant's residence.

¶ 12       Agent Bowers further testified he interviewed defendant after the search warrant was executed. According to Agent Bowers, defendant's responses made sense, and defendant

would answer the questions without long delays. Agent Bowers was surprised defendant had self-taught himself computer programming using the language Linux. Moreover, Agent Bowers testified defendant was released on home confinement and a laptop computer was found concealed in defendant's bedroom. The computer was searched and over 60 images and 100 videos of child pornography were found on the computer.

¶ 13 In closing arguments, the State asked for 15 years on each count, and defense counsel asked for the minimum 6 years on each count. In announcing its sentence, the circuit court noted it found defendant fell under the definition of intellectual disability as set forth in section 5-1-13 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-1-13 (West 2016)) The court found defendant's intellectual disability was a mitigating factor. As to aggravating factors, the court noted defendant's criminal history involved children and sexual issues. It also noted the sentence was necessary to deter others from committing the same crime. Moreover, the court found defendant's failure to disclose his e-mail address on his sex offender registration form was indicative of his understanding the wrongfulness of what he was doing. It noted "a minimum sentence would significantly take away from the seriousness of this offense when coupled with his prior criminal history." The court sentenced defendant to five consecutive terms of 10 years' imprisonment.

¶ 14 On November 3, 2016, defendant filed a timely motion to reconsider his sentence, contending (1) his sentence was excessive; (2) "the court failed to follow Article 1, Section 2, of the Illinois Constitution, which states as follows: 'All penalties to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship' "; and (3) the sentence imposed was inconsistent with the facts that defendant pleaded guilty, the crime was a nonviolent one, and defendant's limited criminal history. At a

January 2017 hearing, the circuit court denied defendant's motion to reconsider his sentence. Defendant appealed, and this court allowed defendant's agreed motion for summary remand for strict compliance with Rule 604(d). *Durst*, No. 4-17-0024.

¶ 15 On remand, defense counsel filed a certificate required by Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) but did not file a new motion to reconsider. After an October 5, 2017, hearing, the circuit court again denied defendant's motion to reconsider his sentence.

¶ 16 On October 10, 2017, defendant filed a timely notice of appeal from the circuit court's October 5, 2017, denial of his motion to reconsider his sentence. The notice of appeal was in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017) but listed an incorrect date for the appealed judgment. On October 26, 2017, defendant filed a timely amended notice of appeal that listed the correct appealed judgment. See Ill. S. Ct. Rs. 606(d), 303(b)(5) (eff. July 1, 2017). Thus, this court has jurisdiction under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 17                II. ANALYSIS

¶ 18                A. Excessive Sentence

¶ 19 On appeal, defendant first argues his 50-year aggregate sentence for five counts of unlawful possession of child pornography with the intent to disseminate was excessive in light of the nature and seriousness of the offenses. The State disagrees.

¶ 20 The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In sentencing a defendant, the court must consider a number of statutory aggravating and mitigating factors. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West Supp. 2015). However, "the seriousness of an offense is considered the most

important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430.

¶ 21 With excessive-sentence claims, this court has explained appellate review of a defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004)); see also *People v. Alexander*, 239 Ill. 2d 205, 212-

13, 940 N.E.2d 1062, 1066 (2010).

¶ 22      In this case, defendant challenges his aggregate prison term of 50 years for five counts of unlawful possession of child pornography with the intent to disseminate (720 ILCS 5/11-20.1(a)(2) (West 2016)).  The pornography that formed the basis of defendant's five convictions were videos.  Section 11-20.1(c) of the Criminal Code of 2012 (720 ILCS 5/11-20.1(c) (West 2016)) provides, in pertinent part, the following:  "If the violation involves a film, videotape, or other moving depiction, a violation of paragraph (2) of subsection (a) is a Class X felony with a mandatory minimum fine of $1000 and a maximum fine of $100,000."  The sentencing range for a Class X felony is a prison term of "not less than 6 years and not more than 30 years."  730 ILCS 5/5-4.5-25(a) (West 2016).  Moreover, section 5-8-4(d)(2.5) of the Unified Code (730 ILCS 5/5-8-4(d)(2.5) (West 2016)) provides for mandatory consecutive sentences when the defendant is convicted of violating, *inter alia*, section 11-20.1(a)(2) of the Criminal Code of 2012.  Thus, defendant's sentences fall within the statutory sentencing range.

¶ 23      In support of his argument, defendant cites our supreme court's decision in *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000), where it held the circuit court abused its discretion by sentencing the defendant to two consecutive 25-year prison terms. The supreme court found the sentences were manifestly disproportionate to the nature of the offenses.  *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.  There, the defendant momentarily grabbed the breasts of two young girls, who were fully clothed at the time, and made lewd comments and gestures.  *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.  While such behavior was appalling and harmful, the supreme court concluded it was not severe enough to warrant a 25-year sentence.  *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.  The supreme court stated it had to adhere to the constitution's mandate that penalties be determined according to the seriousness of

the offense. *Stacey*, 193 Ill. 2d at 211, 737 N.E.2d at 630, citing Ill. Const.1970, art. I, § 11. In reaching its holding, the supreme court emphasized it was not reweighing any aggravating or mitigating factors. *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.

¶ 24 Defendant contends his offenses were less serious than the ones in *Stacey* because his offenses were victimless. We disagree. The defendant's convictions in *Stacey* were for aggravated criminal sexual abuse, a Class 2 felony (see 720 ILCS 5/12-16(g) (West 1994)), and for criminal sexual abuse, which was elevated to a Class 2 felony because of his prior conviction for aggravated criminal sexual abuse (720 ILCS 5/12-15(d) (West 1994)). *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 629. Additionally, as a result of the defendant's two prior Class 2 felony burglary convictions, the defendant was eligible to be sentenced as a Class X offender on each conviction. *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630 (citing 730 ILCS 5/5-5-3(c)(8) (West 1994)). Here, defendant's convictions are Class X felonies. See 720 ILCS 5/11-20.1(c) (West 2016)). They were not elevated based on prior convictions. Unlike in *Stacey*, the legislature has determined defendant's actions alone warrant Class X sentencing. His 10-year sentence is at the lower end of the Class X felony range as it is only four more years than the minimum. Moreover, the videos defendant intended to disseminate depicted young males under the age of 13 engaged in sexual acts, a serious violation of societal norms. Accordingly, we do not find defendant's 10-year sentence for possession with the intent to disseminate a video depicting a sex act with a minor is manifestly disproportionate to the nature of the offense.

¶ 25 Defendant also points out mitigating factors of his serious health issues and special needs and appears to question the circuit court's findings his sentence was necessary to deter others from committing the same crime and defendant's own need for deterrence. However, the supreme court in *Stacey* emphasized it was not reweighing any aggravating or

mitigating factors.  See *Stacey*, 193 Ill. 2d at 210, 737 N.E.2d at 630.  Here, defendant is essentially asking us to reweigh the evidence at the sentencing hearing, which we will not do. Thus, we find defendant's five consecutive 10-year prison terms were not excessive.

¶ 26                              B. *De Facto* Life Sentence

¶ 27            Defendant raises for the first time on appeal the argument his 50-year aggregate prison term constitutes an unconstitutional *de facto* life sentence imposed on an intellectually disabled person without applying the constitutional safeguards that originated with *Atkins v. Virginia*, 536 U.S. 304 (2002), and created by *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny.  The State asserts *Atkins* and *Miller* do not apply to defendant and, even if they did, defendant did receive the safeguards provided by those cases.

¶ 28            In *Atkins*, 536 U.S. at 321, the United States Supreme Court held the death penalty was not suitable punishment for a criminal who is intellectually disabled.  In reaching that conclusion, the *Atkins* court noted people who are intellectually disabled have "diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others."  *Atkins*, 536 U.S. at 318.

¶ 29            *Miller* is part of a line of United State Supreme Court cases addressing the applicability of the eighth amendment's ban on "cruel and unusual punishments" (U.S. Const., amend. VIII) to sentencing juveniles.  In *Miller*, 567 U.S. at 489, the United States Supreme Court found a sentencing scheme that mandated life in prison without the possibility of parole for juvenile offenders (those under the age of 18), including those convicted of homicide, violated the "principle of proportionality," and thus the eighth amendment's ban on cruel and unusual punishment.  The *Miller* Court did not foreclose sentencing a juvenile convicted of

homicide to life in prison, but it emphasized the judge or jury must have the opportunity to consider mitigating factors before imposing the harshest possible penalty on a juvenile. *Miller*, 567 U.S. at 489. Specifically, the *Miller* Court explained a sentencing court must consider how children are different from adult offenders for purposes of sentencing and the offender's youth and attendant characteristics before imposing life imprisonment without the possibility of parole on a juvenile offender. *Miller*, 567 U.S. at 480, 483.

¶ 30 The Illinois Supreme Court has held "*Miller* applies to discretionary sentences of life without parole for juvenile defendants." *People v. Holman*, 2017 IL 120655, ¶ 40, 91 N.E.3d 849. Our supreme court has further extended *Miller* to a juvenile defendant's mandatory term of years that was the functional equivalent of life without the possibility of parole (*de facto* life sentence). *People v. Reyes*, 2016 IL 119271, ¶¶ 9-10, 63 N.E.3d 884. It later defined a *de facto* life sentence by declaring "a prison sentence of 40 years or less imposed on a juvenile offender does not constitute a *de facto* life sentence in violation of the eighth amendment." *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 31 The aforementioned cases all involved juvenile defendants. The Illinois Supreme Court has declined to extend *Miller* to all young adults under the age of 21, finding "the age of 18 marks the present line between juveniles and adults." *People v. Harris*, 2018 IL 121932, ¶ 61, 120 N.E.3d 900. While the supreme court denied the young adult defendant's facial challenge to his aggregate sentence based on *Miller*, it did not foreclose an as-applied challenge based on the reasoning of *Miller* for young adults. See *Harris*, 2018 IL 121932, ¶ 48.

¶ 32 As to the defendant's as-applied constitutional challenge, the supreme court found it was premature. *Harris*, 2018 IL 121932, ¶ 46. The supreme court noted the following:

"A court is not capable of making an as applied determination of

- 12 -

unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as applied is premature." (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 39 (quoting *People v. Rizzo*, 2016 IL 118599, ¶ 26, 61 N.E.3d 92).

In *Harris*, 2018 IL 121932, ¶ 40, the defendant raised the issue for the first time on direct appeal. "Thus, an evidentiary hearing was not held on his constitutional claim, and the trial court did not make any findings of fact on defendant's specific circumstances." *Harris*, 2018 IL 121932, ¶ 40. The court further noted that, because the defendant was an adult, *Miller* did not apply directly to his circumstances, and thus the record had to be sufficiently developed to address the claim *Miller* applied to the defendant's particular circumstances. *Harris*, 2018 IL 121932, ¶ 45. The supreme court had previously reached the same conclusion when a young adult defendant raised an as-applied constitutional challenge to his sentence under *Miller* for the first time on appeal from dismissal of a petition brought under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)). See *People v. Thompson*, 2015 IL 118151, ¶ 44, 43 N.E.3d 984.

¶ 33          While the supreme court concluded the defendant's as-applied challenge was premature, it pointed out the defendant's claim could be brought in another proceeding. *Harris*, 2018 IL 121932, ¶ 48. Specifically, the defendant could raise his as-applied challenge under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq*. (West 2016)), which "allows for raising constitutional questions which, by their nature, depend[ ] upon facts not found in the record." (Internal quotations marks omitted.) *Harris*, 2018 IL 121932, ¶ 48 (quoting *People v. Cherry*, 2016 IL 118728, ¶ 33, 63 N.E.3d 871). Such a challenge "could also potentially be raised in a petition seeking relief from a final judgment under section 2-1401 of the Code of Civil Procedure

(735 ILCS 5/2-1401 (West 2016)).” *Harris*, 2018 IL 121932, ¶ 48.

¶ 34    As in *Harris*, defendant raises his as-applied constitutional claim for the first time on direct appeal. Additionally, like the defendant in *Harris*, *Miller* does not directly apply to defendant's circumstances as he is an intellectually disabled adult and not a juvenile. Moreover, in support of his argument, defendant cites the First District's decision in *People v. Coty*, 2018 IL App (1st) 162383, ¶ 86, 110 N.E.3d 1105, *appeal allowed*, No. 123972 (Ill. Jan. 31, 2019), where it concluded the intellectually disabled defendant's 50-year *de facto* life sentence without the procedural safeguards of *Atkins*, *Miller*, and progeny violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). There, the intellectually disabled defendant raised his proportionate penalties argument in his motion to reduce his sentence. *Coty*, 2018 IL App (1st) 162383, ¶ 57. Since defendant raises his as-applied challenge for the first time on direct appeal, we find defendant's as-applied constitutional challenge is premature and decline to address it.

¶ 35                    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the Woodford County circuit court's judgment.

¶ 37    Affirmed.