NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

FILED
January 15, 2020
Carla Bender
4th District Appellate
Court, IL

2020 IL App (4th) 170900-U

NOS. 4-17-0900, 4-17-0901 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MEGAN R. JOHNS, | ) | Nos. 16CF78 |
| Defendant-Appellant. | ) | 16CF170 |
| | ) | |
| | ) | Honorable |
| | ) | Jennifer Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The circuit court did not abuse its discretion by sentencing defendant to an
aggregate prison term of 13 years.

¶ 2        Pursuant to an open plea agreement, defendant, Megan R. Johns, pleaded guilty to

the following:  (1) one count of unlawful delivery of a controlled substance (count I) in

Livingston County case No. 16-CF-78 (hereinafter case No. 78) and (2) two counts of unlawful

delivery of a controlled substance (counts I and II) in Livingston County case No. 16-CF-170

(hereinafter case No. 170).  After an August 2017 sentencing hearing, the Livingston County

circuit court sentenced defendant to a five-year prison term for unlawful delivery of a controlled

substance in case No. 78 to run consecutive to an eight-year sentence for the Class 1 felony of

unlawful delivery of a controlled substance in case No. 170 (count I), which was to run

concurrently to a five-year prison term for the Class 2 felony of unlawful delivery of a controlled substance in case No. 170 (count II). Defendant timely filed a motion to reconsider her sentences in both cases, which the court denied after a December 2017 hearing.

¶ 3          Defendant appeals, arguing her aggregate 13-year prison sentence is excessive. We affirm.

¶ 4                         I. BACKGROUND

¶ 5                         A. Case No. 78

¶ 6          In March 2016, the State charged defendant by information with one count of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)) (count I) and one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) (count II) for her actions on February 21, 2016. Additionally, the State charged defendant with one count of unlawful possession of hypodermic syringe (720 ILCS 635/1(a) (West 2016)) (count III) and one count of unlawful possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2014)) (count IV) for her actions on March 4, 2016. On March 22, 2016, defendant posted bond and was released from pretrial custody on the four charges.

¶ 7          At a July 20, 2017, hearing, defendant pleaded guilty to one count of unlawful delivery of a controlled substance pursuant to a plea agreement, under which the State agreed to dismiss the other charges. The plea agreement was open as to sentencing. After admonishing defendant, the State gave a factual basis. The factual basis provided a confidential source advised the Pontiac police department the source could purchase heroin from defendant at her residence. The police then set up a controlled buy using the confidential source. The police observed the confidential source enter defendant's residence and shortly thereafter exit defendant's residence. The confidential source handed the officers a sandwich Baggie

containing three foils of heroin and the overhear recording device. The confidential source informed the police the source entered the residence and went to defendant's bedroom where defendant was sleeping. The confidential source woke defendant up and gave her $70, which defendant placed in her purse. Defendant then removed a sandwich Baggie containing three foils of heroin from her bra and handed it to the confidential source. After hearing the factual basis, the court accepted defendant's guilty plea to one count of unlawful possession of a controlled substance, dismissed the other three charges, and set the cause for a sentencing hearing.

¶ 8                          B. Case No. 170

¶ 9          In June 2016, the State charged defendant by information with the following: (1) one count of unlawful delivery of a controlled substance within 1,000 feet of a school (720 ILCS 570/401(d)(i) (West 2016)) (count I) for her actions on May 22, 2016; (2) one count of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)) (count II) for her actions on May 18, 2016; (3) one count of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)) (count III) for her actions on May 23, 2016; (4) one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2016)) (count IV) for her actions on June 5, 2016; and (5) one count of unlawful possession of hypodermic syringe (720 ILCS 635/1(a) (West 2016)) (count V) for her actions on June 5, 2016.

¶ 10          At a May 23, 2017, hearing, defendant pleaded guilty to the first two counts of unlawful delivery of a controlled substance pursuant to a plea agreement, under which the State agreed to dismiss the other charges. The plea agreement was open as to sentencing. After admonishing defendant, the State gave a factual basis. The factual basis provided a confidential source advised the police department on May 18, 2016, the source could purchase a bag of heroin from defendant. The police then set up a controlled buy using the confidential source.

The confidential source parked in a driveway and waited for defendant. Defendant walked down the street and up to the confidential source's vehicle. According to the confidential source, when defendant approached the vehicle, defendant removed a cellophane wrapper from her crotch area that contained five to six pink jeweler bags of heroin. Defendant then removed one of the bags and gave it to the confidential source. The confidential source handed defendant $20. The bag of heroin the confidential source received from defendant field-tested positive for heroin. Again, on May 22, 2016, the confidential source informed the police the source could purchase two bags of heroin from defendant for $45. In front of a South Side Cemetery, the confidential source made contact with defendant and gave her $45. Defendant counted the money and "retrieved a cellophane wrapper from her right pocket containing four to five jeweler bags of heroin." Defendant then pulled out two of the bags and gave them to the confidential source. The police officers recovered the two bags, and the substance in the two bags again field-tested positive for heroin. The police officers noted the location where the buy took place was within 1,000 feet of Lincoln Elementary School, which is a public school in Pontiac. The court accepted defendant's guilty plea to one count of unlawful possession of a controlled substance, dismissed the other three charges, and set the cause for a sentencing hearing.

¶ 11                                    C. Joint Proceedings

¶ 12            In July 2016, defendant moved for a furlough for a mental-health evaluation, which the circuit court granted, and in August 2016, defendant obtained a furlough for a substance-abuse evaluation. At a September 2016 status hearing, defense counsel represented defendant did attend her substance-abuse evaluation and returned from the evaluation. Defendant was waiting on a bed for substance-abuse treatment. Defense counsel requested an evaluation for Treatment Alternatives to Street Crime (TASC) for both cases. The court granted

defendant's request, but the record contains no evidence a TASC evaluation occurred. Also, in September 2016, the court granted defendant a furlough to attend inpatient treatment for substance abuse.

¶ 13　　　At a March 2017 pretrial hearing, the circuit court addressed a new charge. In Livingston County case No. 17-CF-62, the State charged defendant with escape for her knowing failure to return from furlough to the Livingston County jail pursuant to the order allowing the furlough for drug treatment. The court granted defendant another furlough to continue with intensive outpatient treatment for substance abuse, and the State later dismissed the escape charge.

¶ 14　　　On July 14, 2017, the presentence investigation report was filed and an updated version was filed on August 23, 2017. The report revealed defendant was unsuccessfully discharged from intensive outpatient treatment in June 2017 due to her positive drug screens for opiates on June 12 and 21. On July 18, 2017, defendant returned to residential treatment and left treatment unplanned on August 6, 2017. Defendant's counselor at the treatment center reported defendant frequently stated her desire to leave treatment. Before defendant left the residential treatment center, plans had been made for defendant to be assessed for outpatient aftercare in Aurora, Illinois on August 21, 2019. Before the latest rounds of substance-abuse treatment, defendant had participated in a residential treatment program in 2005, 2011, and 2012. Defendant's heroin addiction had started when she was 15 years old.

¶ 15　　　As to defendant's criminal history, the presentence investigation report showed defendant had two prior felony convictions for unlawful possession of a controlled substance, one in 2010 and one in 2011, a 2009 misdemeanor conviction for possession of a syringe, and a 2004 traffic offense for failure to notify damage to an unattended vehicle. Defendant did

successfully complete probation for the traffic offense. However, defendant's probation for the 2010 felony was unsatisfactorily terminated. With the 2011 felony, her probation was revoked for her drug use, and she received a sentence of three years' imprisonment. Additionally, defendant had four juvenile cases. When asked to explain the offense in case No. 78, defendant reported she was arrested for selling drugs to her family. She knew what she did was wrong but thought she was helping family.

¶ 16 Defendant's personal history showed her family of origin had issues with drug addiction and criminal activity. She also divorced her husband when he received a 41-year prison term for "Manufacture/Deliver Controlled Substance." Moreover, defendant had three children. She had relinquished her parental rights to her oldest child, and her two younger children lived with defendant's half-sister. Defendant had only a ninth-grade education and a sporadic work history. She also suffered from hepatitis C.

¶ 17 At the August 31, 2016, sentencing hearing, the State presented the testimony of Pontiac Police Officer Derek Schumm. Officer Schumm observed the controlled buy on May 23, 2016, along with Detective Franklin. The confidential source entered a home and exited about four minutes later. After exiting, the confidential source walked to his location and handed him a Baggie corner which contained three jeweler bags with purported heroin powder inside. The confidential source told Officer Schumm he or she located defendant in a downstairs bedroom with three other people. Defendant and one other person were actively using heroin when the confidential source entered the bedroom. The confidential source gave defendant $75 in cash, and defendant gave the confidential source the three jeweler bags of heroin. The approximate weight of the three bags was 0.5 grams, and all three bags tested positive for heroin.

¶ 18 Officer Schumm also testified he arrested defendant on June 5, 2016. He went to

her residence and talked with Kenneth Wheaton. Wheaton stated he resided in the home with his girlfriend, and defendant and Anthony Kroll resided in the basement. Officer Schumm located defendant and Kroll in the basement bedroom. After taking defendant into custody, Officer Schumm searched the bedroom. He found 11 syringes inside a green washcloth that was underneath an end table. A soda can also contained some needles. Additionally, Officer Schumm found two spoons with heroin residue and a Baggie with eight jeweler bags containing heroin residue. Defendant admitted the syringes, spoons, and Baggie belonged to her.

¶ 19        In closing arguments, the State asked for eight years on the Class 1 felony in case No. 170 to run concurrent with a five-year sentence on the Class 2 felony. As to the Class 2 felony in Case No. 78, the State asked for a five-year sentence to run consecutive to the eight-year sentence in Case No. 170. Defense counsel asked for probation with treatment requirements, and if the court did not want to do that, then the minimum sentence on each count and a recommendation for a drug treatment program in the Department of Corrections.

¶ 20        In announcing its sentence, the circuit court recognized defendant had a lifelong struggle with heroin addiction. The court found the aggravating factors included deterrence and her prior criminal record. The court noted defendant delivered drugs over an extended period of time. The court did not find any mitigating factors. The court then sentenced defendant to a five-year prison term for unlawful delivery of a controlled substance in case No. 78 to run consecutive to an eight-year sentence for the Class 1 felony of unlawful delivery of a controlled substance in case No. 170, which was to run concurrently to a five-year prison term for the Class 2 felony of unlawful delivery of a controlled substance in case No. 170.

¶ 21        On October 2, 2017, defendant filed a timely motion to reconsider her sentence, contending (1) the circuit court failed to consider TASC probation and (2) defendant did not

receive time for her furloughs for inpatient substance-abuse treatment.  Defense counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).  After a December 7, 2017, hearing, the court denied defendant's motion to reconsider sentence.

¶ 22    On December 8, 2017, defendant filed timely notices of appeal from the circuit court's denial of her motion to reconsider her sentence.  The notice of appeal was in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017).  Thus, this court has jurisdiction of both appeals under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).  On appeal, this court docketed defendant's appeal in case No. 78 as No. 4-17-0900 and defendant's appeal in case No. 170 as No. 4-17-0901.  On October 4, 2019, this court granted defendant's motion to consolidate the two appeals.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, defendant contends her 13-year aggregate sentence for three counts of unlawful delivery of a controlled substance is excessive and asks this court to exercise our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967) and reduce her sentence to the minimum aggregate sentence.  The State disagrees defendant's sentence is excessive.

¶ 25    The Illinois Constitution mandates "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."  Ill. Const. 1970, art. I, § 11.  In sentencing a defendant, the court must consider a number of statutory aggravating and mitigating factors.  See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West Supp. 2015).  However, "the seriousness of an offense is considered the most important factor in determining a sentence."  *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53, 23 N.E.3d 430.

¶ 26    With excessive-sentence claims, this court has explained appellate review of a

defendant's sentence as follows:

> "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004)); see also *People v. Alexander*, 239 Ill. 2d 205, 212-13, 940 N.E.2d 1062, 1066 (2010).

¶ 27    As stated, defendant challenges her aggregate prison term of 13 years for three counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2016)).

One of the counts was based on delivery within 1,000 feet of a school, and thus it was a Class 1 felony. See 720 ILCS 570/407(b)(2) (West 2016). A person convicted of a Class 1 felony is subject to a sentencing range of 4 to 15 years in prison. 730 ILCS 5/5-4.5-30(a) (West 2016). The other two counts were Class 2 felonies. See 720 ILCS 570/401(d)(i) (West 2016). A person convicted of a Class 2 felony is subject to a sentencing range of three to seven years in prison. 730 ILCS 5/5-4.5-35(a) (West 2016). Additionally, defendant committed the two offenses in case No. 170 while on pretrial release in case No. 78, and thus defendant's sentence in case No. 170 had to run consecutive to her sentence in case No. 78. See 730 ILCS 5/5-8-4(d)(8) (West 2016). Accordingly, defendant's sentences fall within the statutory sentencing range.

¶ 28        Defendant contends her sentence is greatly at variance with the spirit and purpose of the law and manifestly disproportionate to the nature of the offense. She also contends the circuit court overlooked her rehabilitative potential. We disagree.

¶ 29        The record in this case shows defendant had been in inpatient substance-abuse treatment several times for more than a decade. During the pendency of these cases, defendant completed a residential treatment program and was involved in an intensive outpatient program. She was discharged from the outpatient program because she again began using drugs. Defendant then entered another residential treatment program but left "unplanned." Defendant also had a significant criminal history. Given those facts, defendant's rehabilitative potential was bleak. In explaining its sentence, the circuit court did mention it was considering defendant's rehabilitative potential along with other factors in determining defendant's sentence. Thus, we disagree the circuit court overlooked defendant's rehabilitative potential.

¶ 30        Defendant emphasizes her crimes involved a small amount of controlled substance and claims the facts warrant a minimum aggregate sentence. However, the court

found defendant's criminal history and need for deterrence were strong aggravating factors in this case. The record supports those findings. Delivering any amount of a controlled substance to any other person on multiple occasions is a serious offense. We disagree defendant's statement she sold the drugs to her family makes the crimes less serious. The evidence of defendant's lengthy drug addiction and her family's problem with drugs as well as the amounts of heroin were presented to the circuit court. Defendant is essentially asking this court to reweigh the sentencing evidence, which we will not do.

¶ 31       Accordingly, we find the circuit court did not abuse its discretion by imposing an aggregate 13-year sentence on defendant and decline to reduce defendant's sentence.

¶ 32                                    III. CONCLUSION

¶ 33       For the reasons stated, we affirm the Livingston County circuit court's judgment.

¶ 34       Affirmed.